[No. 4194.   Decided August 19, 1902.]

GEORGE R. MARIS, *Respondent,* v. JAMES M. CLEVENGER
*et al., Appellants.*

APPEAL — ERROR IN OVERRULING DEMURRER — EFFECT OF SUBSE-
QUENT AMENDMENT OF COMPLAINT.

Error, if any, in overruling a demurrer to a complaint will
not be considered on appeal, where the alleged defect has been
obviated by the amendment of the complaint on the trial.

LOGGING LIENS — ENFORCEMENT — AMENDMENT OF COMPLAINT AND CLAIM.

Under Bal. Code, §§ 5942, 5944, which provide that amendments to pleadings in actions to enforce logging liens shall be liberally allowed, and that no mistake or error in the statement of the demand shall invalidate the lien, unless made with intent to defraud, the complaint, and the notice of lien made a part thereof, may be amended upon the trial of the action so as to show that the claim of lien was for logs cut within eight months prior to filing the lien, instead of within nine months prior thereto, as the original complaint and claim had erroneously alleged.

SAME.

Under Bal. Code, §§ 5942, 5944, permitting amendments and declaring that unintentional errors in lien claims should not invalidate same, the right of lien would not be destroyed by the mingling of non-lienable with lienable claims.

SAME — WAIVER OF LIEN BY CONTRACT.

A contract between the owner of land and other parties for logging same would not constitute a waiver of the owner's right of lien upon the logs cut, by reason of provisions in the contract that the loggers were given a certain time to log the land, within which time they were to run the timber out by way of the river to some reliable mill or lumber company on Gray's Harbor and market the same within a reasonable time, leaving with the purchaser of such logs the stumpage agreed upon, since there is nothing in such provision to the effect that the owner agreed not to look for his pay until the logs were sold nor anything else negativing the intention of the owner to claim a lien (*Anderson v. Tingley*, 24 Wash. 537, distinguished).

Appeal from Superior Court, Chehalis County.—Hon. MASON IRWIN, Judge. Affirmed.

*W. H. Abel* and *A. M. Abel,* for appellants.

*J. A. Hutcheson,* for respondent.

The opinion of the court was delivered by

WHITE, J.—The respondent and the appellant entered into the following written contract:

"This agreement made and entered into this the third day of April, 1898, by and between G. R. Maris, party of the first part, and James Clevenger and H. M. Brummett, co-partners as Clevenger & Brummett, parties of the second part, all of Satsop, Chehalis county, Washington, Witnesseth: That for and in consideration of the payments, specifications, and agreements hereinafter named to be faithfully performed and paid by the said second parties:

"The first party hereby sells, transfers, and sets over to the second parties all the timber on the North East $\frac{1}{4}$ of the North East $\frac{1}{4}$ and the East half of the North West $\frac{1}{4}$ of the North East $\frac{1}{4}$ of section 15, township 18 North, range 7 West, Willamette Meridian, except the part that slopes toward the gulch running east and west near the south line of above described land, that shall be cut and put into the Satsop river within one year next after the date of this agreement. The second parties hereby agree that as consideration of the sale of the above named timber that they will put the said timber into the Satsop river, brand all logs so taken from the said land with the brand 'J2', that they will run the said timber out of the Satsop river and to some reliable mill or lumber company on Gray's Harbor, and there sell the same logs as soon as practicable, and that they will leave with the purchaser or purchasers of the said logs the sum of seventy-five cents (75c) per thousand feet for all logs sold for less than five dollars per thousand and the sum of one dollar per thousand for all logs sold for five (5) dollars or more per thousand feet, subject to the order of George R. Maris, party of the first part herein. Second parties hereby agree that if any help is employed in any manner in the cutting or marketing said logs, whereby any right is created to a lien against said logs or timber for labor, that they the second parties will compel the help so employed to sign a waiver of all right to lien on the said logs or timber until the said stumpage is secured by the party of the first part, and the party of the first part shall have the right to dictate the terms of the said waiver of labor lien right. The failure on the part of the second parties to perform all their

agreements herein stated shall be authority for the cancellation of this agreement by the first party.

"In Witness Whereof we, the first and second parties, have hereunto set our hands the day and year first above written.

"George R. Maris, party of the first part; J. M. Clevenger, H. M. Brummett, parties of the second part. Clevenger and Brummett are to have until December 25, 1899, to log on the above land.          GEORGE R. MARIS."

The complaint in this action was filed in the superior court in Chehalis county February 5, 1900. The suit was originally against the appellants and the Anderson & Middleton Lumber Company, a corporation. The complaint, besides the formal allegations of the partnership of appellants and organization of said corporation, alleged the ownership of the land described in the contract to be in plaintiff, and then alleged:

"That on or about the third day of April, 1898, plaintiff and said defendants, Clevenger & Brummett, entered into an agreement whereby and by the terms of which plaintiff permitted said Clevenger & Brummett to go upon his said land and cut thereon saw logs and remove the same to market, for which privilege said last named defendants were by the terms of said agreement to pay plaintiff the agreed price of one dollar per thousand feet, as stumpage, on all logs sold for five dollars per thousand feet and at the rate of seventy-five cents per thousand feet on all said logs so cut on said land and sold for less than five dollars per thousand feet, and to use due diligence in taking said logs to market and leave said stumpage at the mills where and when said logs were sold for payment by such mills to plaintiff.

"That pursuant to said agreement said defendants, Clevenger & Brummett, entered upon said land and cut and removed therefrom saw logs amounting in quantity to three hundred seventy thousand (370,000) feet board measure and, as plaintiff is informed and believes and

therefore alleges, sold all of said logs at the mills for the
sum of five dollars per thousand feet board measure; and
plaintiff alleges that, if any of said logs were not sold
by said defendants prior to this date, it was owing to the
negligence of said defendants in marketing the same:
and there became due and owing from said defendants,
Clevenger & Brummett, as said stumpage the sum of
three hundred and seventy dollars for said logs which
said defendants ceased to remove from said land and cut
on the 6th day of May, 1899, and were cut and removed
from said land within eight months next prior to said date,
no part of which sum has been paid to plaintiff by said
defendants, nor by any mill, except the sum of $196.85
and there is now due and owing to plaintiff from said de-
fendants, Clevenger & Brummett, the sum of one hun-
dred and seventy-three and 15-100 ($173.15) dollars,
though plaintiff has often demanded said sum from said
defendants and from the mills where said logs were
sold.   All of said logs were marked thus before being re-
moved from said land: 'J2,' known as J2 brand and
were the only logs in said county so branded.

"That on the fifth day of June, 1899, and within thirty
days from and after the time when defendants, Cleven-
ger & Brummett, ceased to cut and remove said logs on
said land, plaintiff filed for record with the county aud-
itor of said Chehalis county, state of Washington, in
which said logs were located, and cut, a statement of his
said demand for said stumpage and the amount thereof,
after deducting all just credits and offsets, with the names
of said defendants with whom said agreement for the
cutting of said logs was made, and the terms and con-
ditions of said contract or agreement, and a description
of said logs to be charged with his lien sufficient for iden-
tification with reasonable certainty, which claim is verified
by the oath of plaintiff to the effect that he believed the
same to be true, and which said statement and claim of lien
was thereafter duly recorded in Volume 5 of Lien Record,
at pages 624-5, in the office of said auditor, and the period of
eight calendar months since the filing of said lien will ex-

pire and plaintiff will lose his right of lien unless civil action is commenced at this date, a copy of which said lien notice is hereto attached, marked 'Exhibit A,' and made a part of this complaint."

"EXHIBIT A.

"Notice is hereby given that George R. Maris, of Chehalis county, state of Washington, claims a lien upon a lot of fir and cedar saw logs being about 20,000 feet of cedar and 160,000 feet of fir logs which were cut in Chehalis county, and are marked thus 'J2,' and are now lying in the Satsop river and in the Chehalis river and in the Chehalis Boom Co.'s boom in said river and at the mill booms of West & Slade, at Aberdeen, and Anderson & Middleton, at Aberdeen, and at Lewis' mill, in Johns river, for stumpage upon said logs; that the name of the owner of said logs is James Clevenger and H. M. Brummett. That affiant and claimant is the owner of N. E. ¼ of section 15, township 18 North, of range 7 West, Chehalis county, state of Washington and the said James Clevenger and H. M. Brummett agreed to pay said claimant the sum of $1.00 per M. feet if said logs sold for $5.00 per M. feet at the mills when delivered thereat and in case said logs sold for less than $5.00 per M. ft. at the mills then the sum of seventy-five cents per M. feet stumpage should be paid to said claimant; that said Clevenger and H. M. Brummett have cut from said land, in pursuance of said agreement, about 370,000 feet of fir and cedar logs and that said agreement was entered into between said parties between the 1st day of March, 1898, and the 6th day of May, 1899, and said logs were cut and removed from said land between said dates and 30 days has not elapsed since the last of said logs were cut and removed from said land; that the claimant's demand for stumpage upon said logs is $370; that no part thereof has been paid except the sum of $190, being at the rate of $1.00 per M. stumpage for logs already sold and delivered, and there is now due and remaining unpaid thereon, after deducting all just credits and offsets, the sum of $180, in which amount he claims a lien upon said logs, being all the logs put in

under said brand by said James Clevenger and H. M. Brummett."

There was a further allegation that the Anderson & Middleton Lumber Company had eloigned and rendered impossible of identification a certain quantity of the logs, and also an allegation as to the value of the attorney's fee. At the time the suit was brought, the Anderson & Middleton Lumber Company held the proceeds of certain logs which had been cut upon said land under said contract. Afterwards by stipulation of the parties this lumber company deposited in the registry of the trial court the sum of $147.18 to abide the result of this action between the respondent and the appellants, and by stipulation was relieved from any further liability. On the trial, and after the issues had been made, and after a demurrer to the complaint had been overruled, the court permitted the respondent, over the objections of the appellants, to amend the complaint by adding in lieu of the words "said date," in paragraph five, the words "June 5, 1899," and also at the same time, over like objections, to amend the lien notice by adding after the word "dates" the words "and within eight months next prior to the date hereof." The prayer of the complaint is for foreclosure of the lien, attorney's fee, etc. To the complaint a demurrer by the appellants was interposed and overruled. The appellants denied the 4th, 5th, and 6th paragraphs of the complaint and the reasonableness of the attorney's fee, and practically all the allegations of the complaint except the making of the contract. The appellants also pleaded a counterclaim to the effect that their contract with Maris was to cut timber from his lands according to certain lines and boundaries indicated by him to them; that they cut the timber according to such lines and boundaries, and that they and Maris

were afterwards sued by one Schafer, the owner of the adjoining land, for trespass, in cutting timber over the boundary lines; that they notified Maris to defend said action, and that he failed to do so, but interposed a defense upon his own behalf, whereupon Brummett and Clevenger, for themselves, defended the action; that a jury trial was had, and a verdict rendered against Maris, Brummett, and Clevenger; that judgment was rendered thereon in the sum of $138.50, which Maris afterwards paid, and duly filed with the clerk a notice of contribution and subrogation against Brummett and Clevenger in the sum of two-thirds that amount, or $92.33, and held the same as a judgment against them; that their expenses of defending the Schafer suit amounted to the sum of $100; and they ask to be allowed each of said sums as a credit against said stumpage lien, and also prayed that Maris be adjudged estopped to enforce said lien because of the prosecution of the subrogated judgment against them, the same being an independent remedy for the same debt. The reply admitted the Schafer suit, but denied that the logs were cut on boundaries pointed out by respondent, and admitted Maris held the subrogated judgment against these appellants.

The first assignment of error is in overruling the demurrer to the complaint. The specific objections to the sufficiency of the complaint insisted upon by the appellants are as follows:

"1. It does not appear what logs were cut within the eight months next prior to the filing of the lien claim.

"2. It is hence impossible to ascertain the amount for which Maris could claim a lien.

"3. It is hence impossible to ascertain upon what logs Maris could claim a lien.

"4. The lien notice as pleaded was fatally defective.

"5. The stumpage contract pleaded negatived the existence of a lien.

"6.    The complaint does not show appellants failed to leave the stumpage at the mills."

The appellants argue that the complaint is fatally defective in that it shows that the cutting was terminated on May 6, 1899, and that the logs were cut and removed from said land within eight months prior to said date, and the complaint shows that the lien notice was filed on June 5th, or the thirtieth day after the cutting terminated. In other words, the complaint asserted a lien for nine months, whereas the statute gives a lien for only eight months. The court on the trial allowed the complaint and the lien notice which was a part of the complaint to be amended in a manner showing that the logs on which the lien was claimed were cut within eight months next prior to the filing of the lien. The trial was on this amended complaint. Even if the court was in error in overruling the demurrer to the original complaint, we will not now consider the same, because the necessity for so doing has been obviated by the amendments. The amended complaint undoubtedly states a cause of action. It shows that 370,000 feet of logs were cut and removed from the land, and that such removal ceased on May 6, 1899, and that the lien was claimed for all logs removed within eight calendar months next prior to the 5th of June, 1899,—the date of filing the lien. A balance of $178 was claimed on account of this lien. The lien notice required by § 5936, Bal. Code, is not required to state when the cutting or the removal of the timber was commenced. It is sufficient if it appears that the logs upon which the lien is claimed were cut during the eight months next preceding the filing of the notice. It is further provided that:

"No mistake or error in the statement of the demand, or of the amount of credits and offsets allowed, or of the balance asserted to be due to claimant, nor in the descrip

tion of the property against which the claim is filed, shall invalidate the lien, unless the court finds that such mistake or error in the statement of the demand, credits and offsets or of the balance due was made with intent to defraud, or the court shall find that an innocent third party without notice, direct or constructive, has, since the claim was filed, become the *bona fide* owner of the property liened upon, and that the notice of claim was so deficient that it did not put the party upon further inquiry, in any manner." § 5944, Bal. Code.

The issues in this action upon which the findings were made and judgment rendered were on the allegations in the amended complaint, and was between the respondent, who owned the land, and the appellant, who removed the timber therefrom. No third parties are affected.

"If the defendant or defendants appear in a suit to enforce any lien provided by this chapter he or they shall make their answer on the merits of the complaint, and any motion or demurrer against the said complaint must be filed with the answer; and no motion shall be allowed to make complaint more definite and certain, if it appear to the court that the defendant or defendants have or should have knowledge of the facts, or that it can be made more certain and definite by facts which will appear necessarily in the testimony; but the case, unless the court sustains the demurrer to the complaint, shall be heard on the merits as speedily as possible, and amendments of the pleadings, if necessary, shall be liberally allowed." § 5942, Bal. Code.

Under this section and § 5944, *supra*, the court had the right to permit the amendments. The present law relative to liens on logs, spars, etc., was amended in 1893. The case of *Dexter Horton & Co. v. Sparkman*, 2 Wash. 165 (25 Pac. 1070), cited by appellants, which held that the mingling of a lienable with a non-lienable claim destroyed the lien, was decided in 1891, and under the law as it then existed. No provision was made in the

then existing law touching errors and for amendments, as in §§ 5942 and 5944, *supra*. See, also, *Powell v. Nolan,* 27 Wash. 318 (67 Pac. 712.). Under the contract the appellants had until December 25, 1899, to log the land. They were to run the timber out by way of the Satsop river to some reliable mill or lumber company on Gray's Harbor, and within a reasonable time market the same. They further agreed to leave with the purchaser of the logs the stumpage agreed upon. Under this agreement the appellants could pay the stumpage directly to the respondent, or if they did not do that they were to leave the amount with the purchaser. In *Anderson v. Tingley,* 24 Wash. 537 (64 Pac. 747, 85 Am. St. Rep. 959), the lien claimant contracted that he was not to receive pay for his services until the defendant had sold the logs and received the pay from the mill. There is no such contract in the case at bar. It is true that provision is made for the stumpage money being left for the respondent at the mill where the logs may be sold. But the respondent did not agree not to look for his pay until the logs were sold. When the logs were sold the mill became the agent of the respondent to the extent that the stumpage might be left there for him. The meaning of the term in the contract, "and there sell the same logs as soon as practicable," when we consider the evidence, is plain. The logs could be taken to the market only at certain seasons of the year, when the water was up in the river. There is nothing in the contract now under consideration, as there was in the contract in *Anderson v. Tingley, supra,* negativing the intention of the respondent to claim a lien, and that is the controlling reason for the decision in *Anderson v. Tingley.*

The second assignment and third assignment of error is permitting the amendments already mentioned. Under the statute, as we have already said, they were proper, and

the record fails to show any abuse of discretion in allowing them. The next error assigned is in not finding certain facts as proposed by appellants, and in finding the following fact:

"That pursuant to said agreement defendants Clevenger & Brummett entered upon said land and cut and removed a large number of saw logs therefrom and also cut and removed a large number of logs from the adjoining land belonging to one Peter Schafer and Marie Schafer. Said logs being cut from said Schafer's adjoining land by the mistake of the defendants and not owing to any representations of plaintiff as to the line of his said land, and that defendants so cut and removed from plaintiff's said land 222,000 feet of logs, which were sold at the rate of $5.00 per thousand feet of logs by defendants and that according to said agreement there became due from defendants to plaintiff for said logs removed from said above described lands the sum of $220.50, no part of which has been paid to plaintiff by defendants, except the sum of $196.85, and there is still remaining a balance due plaintiff from defendants of $23.65, and that said logs so cut were marked and branded thus: 'J2' and were the only logs in said county so branded,"—and in finding that the lien notice was filed, and that $40 was a reasonable attorney's fee. The findings made by the court are fully sustained by the evidence, as we view the same. We also think the court was justified in refusing to find in favor of the appellants on the issues presented under the counterclaim pleaded as a separate defense. The evidence did not sustain the proposed findings.

The judgment of the court is therefore affirmed.

REAVIS, C. J., and ANDERS, MOUNT, DUNBAR and HADLEY, JJ., concur.