[No. 4969. Decided March 21, 1904.]

MARY BERGMAN, *Respondent*, v. LONDON & LANCASHIRE FIRE INSURANCE COMPANY, *Appellant*.[1]

PLEADINGS—AMENDMENTS—SETTLEMENT—DENIAL OF PAYMENT IN FULL NOT INCONSISTENT WITH ALLEGATION OF PAYMENT UNDER DURESS. Where an answer sets up a payment of $500 in full settlement of an insurance loss, a reply presenting a plain statement of facts to the effect that the payment was made under duress, denying that it was accepted as a compromise or in any way except on account, is not inconsistent with a general denial of the allegations in the answer respecting the settlement, and no prejudice is sustained by allowing a verbal amendment at the trial adding such general denial to the reply.

TRIAL—RE-OPENING CASE AFTER CLOSE OF TESTIMONY—DISCRETION. It is not reversible error to re-open the case after defendant had closed, for the purpose of allowing plaintiff to introduce further evidence, where no abuse of discretion is shown, and the defendant was allowed, and availed itself of, the same privilege.

Appeal from a judgment of the superior court for King county, Albertson, J., entered May 19, 1903, upon the verdict of a jury rendered in favor of the plaintiff. Affirmed.

*Granger & Heifner,* for appellant.

*Leroy V. Newcomb* and *R. W. McClellan,* for respondent.

[1]Reported in 75 Pac. 989.

DUNBAR, J.—This is an action brought to recover a balance claimed to be due under a policy of insurance issued by appellant to respondent. Issues are presented by an amended complaint, answer, reply, and a verbal amendment to the reply. The case was tried by a jury, and the verdict and judgment were in plaintiff's favor for $500. Inasmuch as the main contention in this case is that the reply presents inconsistent defenses to the affirmative allegations of the complaint, it will be necessary to a correct understanding of the case to set out the pleadings at some length. The answer, after making some immaterial admissions, and denying the allegations of the complaint that the defendant had not paid the amount due the plaintiff upon the policy, and that there was $500 due thereon, for further answer, and by way of affirmative defense, alleged:

"(1) That after the occurrence of the alleged fire referred to in said amended complaint, the plaintiff claimed to and from the defendant the full amount insured by said policy; and the defendant believed and in good faith contended that it was not liable for any sum under said policy by reason of said loss; and that thereupon, for the purpose of compromising and settling the said dispute, and to the end that litigation might be avoided, the plaintiff and the defendant settled and adjusted all of the rights of the plaintiff and the liability of this defendant under and by virtue of the policy and the said loss sued upon in this cause, whereby the said defendant agreed to pay to the plaintiff, and the plaintiff agreed to receive from the defendant, the sum of $500 in full settlement of all liability of this defendant to this plaintiff under and by virtue of the policy and alleged loss sued upon in the plaintiff's amended complaint in this cause.

"(2) That on or about September 25, A. D., 1901, in pursuance of said agreement and settlement, the defendant paid to and the plaintiff received from the defendant the sum of $500 in full settlement of all liabilities of this

defendant by reason of the facts alleged in the plaintiff's amended complaint in this cause."

The following reply was interposed to this affirmative defense:

"(1) Replying to paragraph 1 of said affirmative defense, plaintiff says that on or about the 25th of September, 1901, this defendant by its agent Sam B. Stoy did falsely represent to this plaintiff herein that it would settle and pay the amount of the policy referred to in plaintiff's complaint herein; that the plaintiff believing that the defendant herein would pay the policy as promised accompanied the said Sam B. Stoy, agent of the defendant herein, to a room in a certain hotel, towit, the Hotel Butler in the city of Seattle, where the said Sam B. Stoy acting as the agent of the defendant herein did keep this plaintiff confined in the room aforesaid for a long time, and until said plaintiff became weak, faint, and sick and did by the use of violent threats and profane and abusive language so overpower, frighten and intimidate the said plaintiff as to deprive said plaintiff of the control of her senses and render plaintiff incapable of acting freely and voluntarily; and that while said plaintiff was thus overpowered by fear and fright, which fear and fright was the direct result of the aforesaid confinement, violent threats, and abusive language on the part of the said Sam B. Stoy, agent of defendant herein, did accept the sum of $500 upon the policy aforesaid; that the acceptance of the said $500 was the direct result of the fear and fright aforesaid; that the defendant herein did thus by the use of duress, fraud and undue influence induce this plaintiff to accept the sum of $500 upon the aforesaid policy; that the plaintiff herein did not accept the sum of $500 as full payment of the said policy freely and voluntarily, but accepted the same on account and because of the aforesaid duress, fraud and undue influence exercised upon her by the defendant herein. Plaintiff denies each and every allegation in said paragraph 1 of defendant's affirmative defense except that the plaintiff claimed to and from the defendant the full amount insured by said policy.

"(2) Replying to paragraph 2 of said affirmative defense set out in defendant's amended answer herein, the plaintiff denies that she received the sum of $500 on or about the 25th day of September, 1901, in full settlement of all liability of the defendant by reason of the facts alleged in the plaintiff's amended complaint herein; and alleges that the $500 was received on account, and because of the aforesaid duress, fraud and undue influence practiced by the said defendant upon the plaintiff herein."

And, after the opening of the case, the court allowed the plaintiff to amend its reply by adding the following:

"That plaintiff denies each and every allegation by the defendant made in said paragraph except that the plaintiff claimed to and from the defendant the full amount insured by said policy."

It is insisted by the appellant that, by this amendment, plaintiff was permitted to change the entire scope of her case; that up to this time plaintiff was admitting that a settlement had been made, and that the plaintiff had received $500 in full settlement of the loss, but by this denial she was permitted, after the trial had commenced, to deny all of these material facts; that such a denial, even if permissible at the proper time, should not have been permitted after the jury had been impaneled; and that the amendment, together with the reply, constituted inconsistent defenses to the affirmative matters set forth in the answer, and should not have been permitted under the rule announced by this court in *Seattle Nat. Bank v. Carter,* 13 Wash. 281, 43 Pac. 331, 48 L. R. A. 177. In that case it was held that, where an allegation of general denial in an answer is followed in an affirmative defense by a special averment of the truth of the matter which had been denied, the defenses are so inconsistent that they cannot stand together, and that plaintiff will

not be compelled to establish the truth of the allegation in his complaint, to which such defenses are set up.

But it does not seem to us that this case falls within the rule announced by this court in the slightest degree. So far as the amendment offered and allowed by the court is concerned, a reference to the statement of facts, and the colloquy indulged in between the court and counsel, shows that it was simply an attempt on the part of the plaintiff to make plain that which had already been made plain by the allegations in the reply. A long amendment to the reply had been presented by counsel for the plaintiff, which was objected to by the court for the reason that it was so lengthy that the court could not keep in mind the relation it bore to the reply which it sought to amend, the plaintiff in answer to this objection saying:

"It is simply a direct denial of what the defendant alleged in its answer. Your Honor said yesterday it seemed that we didn't specifically deny these allegations. The Court: Why don't you specifically deny it then? Mr. McClellan: We are denying it; that is what I am doing right now—simply denying what the defendant alleges in its answer. I am using defendant's answer to deny what it alleges. You will see by referring to defendant's affirmative answer, the matters that I have denied, set out almost *verbatim et literatim.*"

And, after considerable talk with the court, the counsel again said:

"I want to bring in a general denial of these allegations, except what he admits—that we claimed the full amount. That is the purpose that I am offering this amendment now for to that paragraph of the defendant's answer. And we desire to amend the second paragraph of plaintiff's reply. . . . The Court: Well, why don't you—it seems to me that the amendment will be complete, and such as you desire, if you added that it denied each and every other allegation in said paragraph one contained,

except that plaintiff admits that she did claim the full amount."

And that was accepted, and another amendment offered to the second paragraph in the affirmative answer, which amendment was denied by the court, and properly denied, because the allegations of the reply had already denied every material allegation of the affirmative allegations of the answer. It seems to us that there was no admission in the reply that there had been any settlement wherein $500, or any other sum, had been accepted in full payment of the policy. The reply simply presented a plain statement of facts, to the effect that, by reason of the violent threats, profane and abusive language, etc., the plaintiff was so overpowered, frightened, and intimidated as to deprive her of the use of her senses and to render her incapable of acting freely and voluntarily, and that, while in this condition, she accepted the sum of $500 simply as the direct result of fear and fright; but constantly, and in terms, denied that the said sum of $500 was accepted as a compromise, or in any other way than on account. And, if the statements in the reply are true, and the $500 was paid under the circumstances therein alleged, it must have been paid on account and could not have been paid in accordance with an agreement to compromise. Paragraph 2 of the reply is simply a repetition of the allegations of paragraph 1, in an attempt by the pleader to answer separately the separate allegations made by the answer, separating the agreement itself from an agreement to agree. In *Seattle Nat. Bank v. Carter, supra,* this court said, after announcing that, if inconsistent allegations were allowed, inconsistent proofs could be submitted under them:

"This theory carried to its logical result would permit a defendant who was sued upon a promissory note to al-

lege non-execution, want of consideration, and payment. Under such allegations he would be permitted to swear that he never executed the note; that he *did* execute the note, but that it was without consideration; and that he *did* execute the note, that the consideration *was* good, and that he had paid the same,"

stating that such a practice as this would not only be farcical, but absolutely wrong and immoral and an encouragement of perjury. But we are unable to see how an instance of the kind cited there could be made to apply to the pleadings in this case, where it is stoutly denied, from beginning to end, that the $500 was accepted under an agreement of compromise. Nor do we think that any prejudice was sustained by the appellant by the allowance of the amendment complained of at the time that it was allowed.

The appellant also complains that the court abused its discretion in permitting plaintiff to reopen her main case after defendant had closed its case, and offering testimony in relation to the value of the property consumed by fire. But, in addition to the fact that it does not appear to us from the record that the court abused its discretion in this respect, or that the appellant was in any manner prejudiced thereby, the same latitude was offered in the trial of the case to the appellant, who availed itself of the opportunity presented in this respect. On page 162 of the statement of facts the following occurs:

"Mr. Granger: In view of the fact that the plaintiff's case was reopened for further testimony, the defendant now offers the testimony to be taken of the witness Mr. Brown, as a part of its defense, on the defense to the matters and things brought out by the plaintiff. The Court: The case was only reopened with regard to the particular question of the value of the personal property covered by the insurance; the testimony was directed to that single

point.    Mr. Granger:    I think this goes to that.    The Court:    If it does, of course it would be proper in rebuttal.    Mr. Granger:    If it doesn't, then I will ask the same privilege that plaintiff had, to go into any subject I want to; but I will treat this, for the present, as meeting the testimony offered upon the reopening of the case.    The Court:    Very well."

And the testimony was accordingly admitted.    Again, upon page 168, the following occurs:

"The Court:    Anything further for the defense?    Mr. Granger:    I believe not—although this case has begun to take a course that there might be something I have omitted by oversight.    As far as I can now recall there is nothing. The Court:    I would be glad if counsel would consider the case, and get in their testimony now, the doors having been opened once, the case must be concluded some time.    If there is any matter in the way of testimony in chief which counsel desires to offer at this time, the court having permitted the plaintiff to reopen the case, will be called upon to extend the same indulgence to the defense, but I do not feel that the door should be kept open indefinitely. Mr. Granger:    We rest."

So that it appears from the whole record that, in the interest of justice, liberal latitude was allowed by the court to both parties to the action.

We have examined the instructions and think that they comprise a fair presentation of the law of the case.    The case was tried without error, and judgment is therefore affirmed.

FULLERTON, C. J., and HADLEY, MOUNT, and ANDERS, JJ., concur.